1

2

3

4

5

6

7                     IN THE UNITED STATES DISTRICT COURT

8                   FOR THE EASTERN DISTRICT OF CALIFORNIA

9   OTIS HUNT,

10            Plaintiff,                    No. CIV S-04-2621 FCD GGH

11       vs.

12   JO ANNE B. BARNHART,
     Commissioner of Social
13   Security,
                                        FINDINGS AND RECOMMENDATIONS
14
              Defendant.
15   _____/

16            Plaintiff seeks judicial review of a final decision of the Commissioner of Social

17   Security ("Commissioner") denying plaintiff's application for Supplemental Security Income

18   ("SSI") under Title XVI of the Social Security Act ("Act").  For the reasons set forth below, it is

19   the recommendation of this court that summary judgment be entered in plaintiff's favor, and this

20   matter be remanded for further administrative proceedings.

21   BACKGROUND

22            Plaintiff, born August 6, 1954, applied for disability benefits on September 26,

23   2000. (Tr. at 103, 419.)  Plaintiff alleged he was unable to work since September 1, 1999, due to

24   \\\\\

25   \\\\\

26   \\\\\

1

mental stress and depression.[1]  (Tr. at 419, 111.)   Plaintiff's history indicates that he grew up

with an abusive father who beat him severely, and one time attacked him with a knife, causing

plaintiff to kill his father.  He served time in prison for manslaughter as a result of this incident,

and has served time for multiple other crimes, including carrying a loaded firearm and sexually

molesting his children.  He has been in jail or prison most of the time since 1975.  He estimated

that the longest he has gone without being incarcerated since 1975 was eighteen months.  He also

has a history of substance abuse and mental problems, with two suicide attempts.

In a decision dated May 27, 2004,[2] ALJ L. Kalei Fong, determined that plaintiff

was not disabled.[3]  The ALJ made the following findings:

---

[1]  The ALJ's decision related that plaintiff claimed his disabling conditions were hepatitis, diabetes mellitus, a neck injury, and a left foot injury; however, plaintiff's most recent disability report does not reflect this physical impairments.  (Tr. at 21, 111.)

[2]  Plaintiff had previously applied for disability in 1996, but was denied in 1998.  That decision has no bearing on the instant action because the prior proceeding involved different impairments and resulted in a finding that plaintiff had no severe impairments.  (Tr. at 21.)

[3]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

        Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

        Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.

        Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.

        Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

        Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not

2

1.      The claimant has not engaged in substantial gainful activity since the alleged onset date of disability.

2.      The claimant has a combination of impairments that are severe based on the requirements in the Regulations 20 CFR § 416.920(b).

3.      These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

4.      The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

5.      The claimant has the following residual functional capacity: unskilled medium work with limited public contact.

6.      The claimant's past relevant work as laborer and linen sorter did not require the performance of work-related activities precluded by his residual functional capacity (20 CFR § 416.965).

7.      The claimant's impairments do not prevent the claimant from performing his past relevant work.  Alternatively, considering the claimant's age and vocational factors, Rule 203.28, Table No. 3 of Appendix 2, Subpart P, Regulations No. 4, direct a conclusion that, the claimant is not disabled because a significant number of jobs exist that he can perform.  The minimal limitation involving unskilled work and limited public contact would not significantly erode the base of medium work (Social Security Ruling 85-15).

8.      The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR § 416.920(f)).

(Tr. at 27.)

\\\\\

\\\\\

---

disabled.  If not, the claimant is disabled. Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

1  ISSUES PRESENTED

2        Plaintiff has raised the following issues:  A.  Whether the ALJ Improperly

3  Rejected Plaintiff's Testimony;  B.  Whether the ALJ Improperly Rejected the Opinions of

4  Plaintiff's Treating Physicians; and C.  Whether the Appeals Council Failed to Properly Consider

5  New Evidence.

6  LEGAL STANDARDS

7        The court reviews the Commissioner's decision to determine whether (1) it is

8  based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in

9  the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999).

10  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Saelee v.

11  Chater, 94 F.3d 520, 521 (9th Cir. 1996).  "'It means such evidence as a reasonable mind might

12  accept as adequate to support a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct.

13  1420 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206

14  (1938).  "The ALJ is responsible for determining credibility, resolving conflicts in medical

15  testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir.

16  2001) (citations omitted).  "Where the evidence is susceptible to more than one rational

17  interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

18  Thomas v. Barnhart, 278  F.3d 947, 954 (9th Cir. 2002).

19  ANALYSIS

20        The court takes issue with the ALJ's findings in regard to all three issues raised by

21  plaintiff.  Rather than remand the case based solely on new evidence, however, the court has also

22  discussed the other areas requiring reconsideration in order to aid the ALJ in his analysis on

23  remand.

24      A.  The ALJ Did Not Properly Evaluate Plaintiff's Credibility

25        Plaintiff contends that the ALJ erred in rejecting his mental problems and

26  minimizing his social functioning.

4

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ who used the proper process and provided proper reasons.  See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an explicit credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir.1991) (en banc).  The ALJ may not find subjective complaints incredible solely because objective medical evidence does not quantify them.  Id. at 345-46.[4]  If the record contains objective medical evidence of an impairment possibly expected to cause pain, the ALJ then considers the nature of the alleged symptoms, including aggravating factors, medication, treatment, and functional restrictions.  See id. at 345-47.  The ALJ also may consider the applicant's: (1) reputation for truthfulness or prior inconsistent statements; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) daily activities.[5]  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.  Work records, physician and third party testimony about nature, severity, and effect of symptoms, and inconsistencies between testimony and conduct, may also be relevant.  Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  The ALJ may rely, in part, on his or her own observations,

---

[4]  This does not mean, however, that the lack of objective evidence to support the pain alleged is irrelevant to the analysis.

[5]  Daily activities which consume a substantial part of an applicants day are relevant.  "This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability.  One does not need to be utterly incapacitated in order to be disabled."  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (quotation and citation omitted).

1   see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for

2   medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172, 177, n.6 (9th Cir. 1990).  Absent

3   affirmative evidence demonstrating malingering, the reasons for rejecting applicant testimony

4   must be clear and convincing.  Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595,

5   599 (9th Cir. 1999).

6           In this case, the ALJ first found that although plaintiff reported that his activities

7   were very restricted, he did laundry, dishes, cooking, watched television, watered the lawn, and

8   visited with friends and relatives.  (Tr. at 24.)  Despite his reports that he isolated himself from

9   others and did not leave home, his questionnaires indicated that he visits others weekly.  (Id.)

10  The ALJ added that plaintiff had received minimal treatment which consisted only of medication

11  taken intermittently, and he had undergone no emergency treatment for mental problems.

12  Further, when plaintiff did take medication, they helped his problems.  (Id. at 26.)  The ALJ

13  mentioned that reports by third parties indicate that plaintiff could maintain concentration and

14  pace.  The ALJ also found that plaintiff's complaints were vague and not supported by the

15  record.  (Id.)

16          First, all of the questionnaires to which the ALJ refers predate the relevant period,

17  September 26, 2000 to May 27, 2004, by over three and a half years.  (Tr. at 123-46, 479.)  These

18  questionnaires relate to a prior application for disability concerning impairments which were

19  found to be not severe, as conceded by the current ALJ in her findings.  (Tr. at 21.)  Plaintiff's

20  current impairments were found to be severe in the most recent decision.  Therefore, any claim of

21  limited activities and social functioning from the prior period would not be relevant to plaintiff's

22  current level of functioning.  Even if the most recent daily activities questionnaire from 1997

23  were considered, it reflects that although plaintiff could perform limited household chores, he

24  was otherwise very limited.  He spent most of his day watching television or going to the store to

25  buy cigarettes.  (Tr. at 135.)  The only person he had social contact with was his mother, be it

26  \\\\\

1  talking on the phone or visiting her.  (Id. at 137-38.)  He stated that he cried sometimes and

2  would hide to be alone.  (Id. at 139.)

3         The record contains no daily activities questionnaires for the current period;

4  however, plaintiff testified that during the time since he has been out of jail, he has stayed at his

5  mother's house, and watches television during the day.  (Tr. at 486-87.)  Plaintiff was not

6  represented by counsel at the hearing and the ALJ did not ask him any other questions about his

7  daily activities, but only asked whether plaintiff wanted to tell him anything else about himself.

8  (Id. at 487.)  Plaintiff did not respond by discussing his daily activities.  In his 2001 interview

9  with psychiatrist Greenleaf, plaintiff stated that he lives in an apartment with a friend, does no

10  activity other than dressing and bathing, and is isolated other than contact with his mother and

11  roommate.  (Tr. at 426.)

12         The fact that plaintiff was in jail or prison for much of the pertinent time period is

13  indicative of problems in social functioning, especially when considered in conjunction with his

14  lifelong history of antisocial behavior and mental problems, which includes an abusive

15  upbringing with severe beatings by his father, an attack by his father with a knife to which

16  plaintiff responded by killing his father with a knife, substance abuse, multiple arrests and

17  incarcerations, including for sexual abuse of the eight year old daughter of his girlfriend, and two

18  suicide attempts.  (Tr. at 21-22, 171-75, 364.)

19         In regard to treatment, plaintiff's time in prison during the current time period was

20  on and off between 2000 and 2004 so he cannot be blamed for any lack of or minimal treatment

21  during these times.  (Tr. at 481-82.)  There are no medical records from any correctional facility

22  beyond August, 2000.  The record does reflect some recent treatment; however, since the exact

23  dates of plaintiff's incarcerations since September, 2000 are unknown, and it appears that all of

24  plaintiff's medical records were not forwarded to the Commissioner, (Tr. at 478), it is impossible

25  to ascertain the degree and level of treatment sought by plaintiff.

26  \\\\\

1    The records which are present in the file indicate serious problems.  Dr. Greenleaf

2   evaluated plaintiff for the Department of Social Services without the benefit of medical records.

3   He diagnosed post traumatic stress disorder ("PTSD"), alcohol and cannabis dependence in full

4   remission, and a GAF score of 40, with the highest GAF score in the past year of 40.[6]  (Tr. at

5   427-28.)  He found plaintiff's prognosis to be guarded but not hopeless as long as he received

6   psychiatric care.  (Id. at 428.)  This psychiatrist opined that plaintiff's stress tolerance would be

7   poor and would interfere with his attendance, pace and persistence at work.  (Id.)  Although the

8   ALJ acknowledged this psychiatrist's report, he found it was not supported by the record.

9   Significantly, in summarizing this opinion he did not mention the GAF score of 40.

10    Nor did the ALJ mention the low GAF score of 50[7] as assessed by Visions

11   Unlimited.  (Tr. at 462.) Plaintiff was seen there from January, 2001 to August, 2001, but the

12   records indicate only three visits during this time.  He was treated for depression and PTSD.  (Id.

13   at 461.)  He reported that he did not want to leave the house, he heard echoing of his own words,

14   and he does little activity.  (Id.)  Plaintiff was prescribed Zyprexa and Prozac and lab work was

15   ordered.  (Id. at 461.)  On August 9, 2001, the diagnosis was major depression recurrent with

16   psychotic features, as well as PTSD.  (Id. at 460.)  At this time, plaintiff reported that he was

17   getting out of the house, and had no auditory hallucinations.  (Id.)

18   \\\\\

19   \\\\\

20   \\\\\

---

22   [6]  GAF is a scale reflecting the "psychological, social, and occupational functioning on a
hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental

23   Disorders 32 (4th ed.1994) ("DSM IV").  According to the DSM IV, A GAF of 31-40 indicates:
"Some impairment in reality testing or communication (e.g., speech is at times illogical, obscure,

24   or irrelevant) OR major impairment in several areas, such as work or school, family relations,
judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable

25   to work; child frequently beats up younger children, is defiant at home, and is failing at school.)"

26   [7]  A GAF of 41-50 indicates serious symptoms such as suicidal ideation, severe
obsessional rituals, or serious impairment in social, work, or school functioning.  Id.

1          Evidence submitted to the Appeals Council after the ALJ's decision included

2    records from the Sacramento County Department of Health and Human Services (El Hogar),

3    dated April 22 and 29, 2004.  The examiner noted:

> chronic depressed mood; chronic amotivation and social
> withdrawal; disrupted sleep; anxiety; impaired concentration;
> auditory hallucinations and the perception he is 'reading people's
> minds;' disturbing thoughts; and frequent outbursts of anger.  Due
> to the severity of client's symptoms and risk of further
> decompensation without medications and mental health service, he
> appears to meet the criteria for medical and service necessity.

8    (Id. at 464.)

9          At this time plaintiff reported frequent suicidal ideation, but without plan, means

10   or intent.  (Id. at 468.)  Contrary to the Commissioner's assertion that plaintiff received only

11   medication when he sought treatment, the County recommended counseling and monitoring

12   along with medication.  (Id.)  He was diagnosed with schizoaffective disorder[8], depression, and a

13   GAF score of 48.  He was prescribed Wellbutrin and Zyprexa.  (Id. at 470.)  This evidence is the

14   most recent and therefore most relevant to plaintiff's current condition.

15         Dr. Nguyen evaluated plaintiff's records, apparently without an exam, and

16   concluded that plaintiff was not entirely credible.  (Tr. at 454.)  It is unknown how this consultant

17   made this determination, other than to repeat the ALJ's finding that plaintiff was not credible.

18   (Id. at 453.)

19         The ALJ also erred in not crediting plaintiff's testimony concerning his

20   symptoms.  The opinions of the mental health practitioners that plaintiff suffered from depression

21   and PTSD constitute sufficient medical evidence that could reasonably be expected to produce

---

23         [8] Schizoaffective Disorder is defined as "an uninterrupted period of illness during which,
at some time, there is a Major Depressive, Manic, or Mixed Episode concurrent with symptoms
24   that meet Criterion A for Schizophrenia (Criterion A)."  Criterion A for Schizophrenia includes
delusions, hallucinations, disorganized speech, grossly disorganized or catatonic behavior,
25   affective flattening, restriction in the fluency and productivity of thought and speech and in the
initiation of goal directed behavior.  Diagnostic and Statistical Manual of Mental Disorders 292,
26   275 (4th ed. 1994).

9

1   some level of symptoms of the type plaintiff testified to at his hearing and reported to mental

2   health personnel.  Moreover, the ALJ's failure to mention GAF scores ranging from 40 to 50

3   during the relevant time period,[9] and never higher than 50, ignore significant findings of

4   functional limitation.

5          The ALJ could only reject plaintiff's testimony about the severity of his symptoms

6   by offering specific, clear and convincing reasons for doing so.  See Lester v. Chater, 81 F.3d

7   821, 830 (9th Cir.1995).  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir.2001) ("absent

8   affirmative evidence of malingering, an ALJ cannot reject a claimant's testimony without giving

9   clear and convincing reasons.").  The ALJ found plaintiff incredible in part because he performed

10  household chores and visits others weekly.  (Tr. at 24.)  Disability claimants do not have to

11  "vegetate in a dark room."  Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987).  "With respect

12  to daily activities, this court has held that if a claimant is able to spend a substantial part of [her]

13  day engaged in pursuits involving the performance of physical functions that are transferable to a

14  work setting, a specific finding as to this fact may be sufficient to discredit a claimant's

15  allegations."  Vertigan, 260 F.3d at 1049.  But "[t]his court has repeatedly asserted that the mere

16  fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car,

17  or limited walking for exercise, does not in any way detract from her credibility as to her overall

18  disability.  One does not need to be 'utterly incapacitated' in order to be disabled."  Id. at 150

19  (emphasis in original).  See also 20 C.F.R. 404.1572 (household tasks not to be considered

20  substantial gainful activity).  Plaintiff did not testify that "a substantial part" of his day was filled

21  by daily activities.  His ability to perform some daily activities is not clear and convincing

22  evidence that he could work.

23  \\\\\

24

25          [9] Plaintiff received an earlier GAF score of 38 in 1998, but it is outside the relevant time
    period.  (Tr. at 368.)  This score would receive the same interpretation of any score up through
26  40, in any event.

10

1       Other reasons for rejecting plaintiff's testimony also fail the clear and convincing

2   test.  The Commissioner's argument that plaintiff did better with treatment and therefore his

3   failure to consistently obtain treatment detracts from his credibility begs the question.  If he quit

4   treatment because he was feeling better according to the ALJ, how is he expected to hold a job

5   where he must go to work every day *and* religiously take medication?  It is clear that precisely

6   due to his impairment, plaintiff is unable to stick to a treatment schedule.

7       That plaintiff discontinued treatment after experiencing improvement does not

8   implicate his credibility, in light of his mental condition.  Furthermore, plaintiff has been

9   incarcerated most of his adult life, with only short periods of time between serving of sentences

10  during which he could seek treatment outside of prison.

11      Based on the foregoing record evidence, substantial evidence does not support the

12  ALJ's credibility determination.  Because this matter is remanded based on new evidence, the

13  ALJ's credibility findings will need to be reconsidered.  On remand, the ALJ may well desire to

14  obtain a consulting psychiatrist/psychologist who may be able to give an opinion concerning

15  plaintiff's longstanding depressive symptoms.  As such, any credibility findings may be affected

16  by a further examination.

17      B.  The ALJ Did Not Property Evaluate The Opinion of Plaintiff's Treating and

18  Examining Sources

19      Plaintiff contends that the ALJ ignored the opinions of treating sources Visions

20  Unlimited and Sacramento County Mental Health El Hogar program, and dismissed the opinion

21  of Dr. Greenleaf.

22       The weight given to medical opinions depends in part on whether they are

23  proffered by treating, examining, or non-examining professionals.  Holohan v. Massanari, 246

24  \\\\\

25  \\\\\

26  \\\\\

F.3d 1195, 1201 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).[10]  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only for *"clear and convincing"* reasons.  Lester , 81 F.3d at 831.  In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for *"specific and legitimate"* reasons.  Lester, 81 F.3d at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund v. Massanari, 253 F.3d 1152 (9th Cir. 2001),[11] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a non-examining professional, without other evidence, is

---

[10]   The regulations differentiate between opinions from "acceptable medical sources" and "other sources."  See 20 C.F.R. §§ 404.1513 (a),(e); 416.913 (a), (e).  For example, licensed psychologists are considered "acceptable medical sources," and social workers are considered "other sources."  Id.  Medical opinions from "acceptable medical sources," have the same status when assessing weight.  See 20 C.F.R. §§ 404.1527 (a)(2), (d); 416.927 (a)(2), (d).  No specific regulations exist  for weighing opinions from "other sources."  Opinions from "other sources" accordingly are given less weight than opinions from "acceptable medical sources."

[11]   The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; (6) specialization. 20 C.F.R. § 404.1527

1   insufficient to reject the opinion of a treating or examining professional.  <u>Lester</u>, 81 F.3d at 831.

2         In this case, the ALJ rejected the opinion of Dr. Greenleaf, a consultant who

3   evaluated plaintiff one time at the request of the Department of Social Services.  The ALJ

4   thought this opinion was not supported by the remainder of the record, and that when plaintiff

5   took medication after seeing this doctor, his depression and anxiety improved.  Further, the ALJ

6   noted that there was no significant treatment after this time period.  He added that plaintiff was

7   able to live in the stressful environment of prison around other people without difficulty.  (Tr. at

8   25.)

9         The ALJ failed to note, however, that the remainder of the mental treatment

10   record supported Dr. Greenleaf's opinion, especially in regard to plaintiff's GAF scores, all of

11   which were consistent with Dr. Greenleaf's assessment of 40, and notably missing from the

12   ALJ's summary of the record.  Once again, the ALJ's reasoning that plaintiff did not obtain

13   treatment and was able to survive in prison begs the question.  Plaintiff's mental condition most

14   likely caused his failure to seek consistent treatment.  Furthermore, this failure would not change

15   when he was in prison but only deteriorate due to the problematic care given to inmates,

16   especially those with mental impairments.

17         The ALJ summarized the records from plaintiff's treating source, Visions

18   Unlimited, but otherwise did not discuss them other than to generally state that the record did not

19   support a mental impairment. This source's conclusions, as well as those of El Hogar, the new

20   evidence submitted after the ALJ's decision, are consistent with those of Dr. Greenleaf and the

21   remainder of the mental health record.  Both sources assigned GAF scores of 48 to 50, and

22   diagnosed depression and either PTSD or schizoaffective disorder.  They also prescribed

23   significant prescription medications and recommended counseling.  GAF scores that are this low

24   indicate serious impairment including inability to keep a job.  These uncontradicted treating

25   source opinions were not rejected by clear and convincing reasons or by specific and legitimate

26   reasons.  Contrary to the Commissioner's representation, Dr. Fealk at Visions Unlimited did not

1    opine that plaintiff's condition had improved, but only stated that plaintiff was taking his

2    medications regularly and was doing "all right" on them.  (Tr. at 460.)  Nevertheless, this August

3    9, 2001 report is refuted by the more recent evidence submitted after the ALJ's decision which

4    indicates no improvement in GAF score or plaintiff's mental condition, and also indicates that

5    plaintiff had not continued with his medication.

6        The expected "record as a whole" the ALJ found lacking to support Dr.

7    Greenleaf's (and by implication Visions' and El Hogar's) psychiatric diagnoses is not specified.

8    One judge long ago commented that "a psychiatric impairment is not as readily amenable to

9    substantiation by objective laboratory testing as [are other] medical impairment[s] and

10   []consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat

11   less precise than those in [other fields] of medicine."  Alvarez v. Califano, 483 F. Supp. 1284

12   (E.D. Pa. 1980).  While diagnostic testing may have improved since that time, it remains true that

13   "[a]lthough a psychiatric impairment is not as readily amenable to substantiation by objective

14   laboratory testing as other medical impairments due to the less precise nature of the diagnostic

15   techniques employed in the field of psychiatry compared with those applied in other fields of

16   medicine, this is not a ground for rejecting a psychiatric report absent some evidence that

17   suggests there is a reason to question the diagnostic technique."  3 Soc. Sec. Law & Prac. §

18   42:119 (2004), Westlaw Database SSLP § 42:19.  Moreover, it remains the law that "merely to

19   state that a medical opinion is not supported by enough objective findings does not achieve the

20   level of specificity our prior cases have required, even when the objective factors are listed

21   seriatim.  Disability may be proved by medically-acceptable clinical diagnoses, as well as by

22   objective laboratory findings."  Rodriguez v. Bowen, 876 F.2d 759, 762 (9th Cir.1989)

23   (quotations and citations omitted).

24       In sum, the ALJ's reasons for rejecting the examining opinion are insufficient.

25   The reasons for rejecting the treating opinions are unstated.  Accordingly, the ALJ erred in

26   rejecting these opinions.  After receiving new evidence on remand, the ALJ shall review the

1  record and if she still intends to disregard these opinions, she must provide proper reasons for

2  doing so.

3          C.    The New evidence Submitted to the Appeals Council Warrants Remand

4                  Federal courts may undertake review of administrative adjudicatory decisions

5  made by the Department of Health and Human Services, but only if the decision is considered the

6  final decision of the Commissioner.  42 U.S.C. § 405(g).  The Commissioner has issued

7  regulations which define when final decisions have been made.  See, 20 C.F.R. § 416.1455

8  (defining when the decision of the ALJ is the final decision of the Commissioner, as well as the

9  function of the Appeals Council.  20 C.F.R. § 416.1467 et. seq.)  Decisions of the Appeals

10  Council refusing to review an ALJ's decision on the merits because the issues raised do not meet

11  the requirement for review on the merits are not final decisions; in such cases the ALJ's decision

12  is the final decision of the Secretary.  O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994);

13  Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir. 1992); Russell v. Brown, 856 F.2d 81, 83-84

14  (9th Cir. 1988).  Only if the Appeals Council grants review, and then issues a decision on the

15  merits does the Appeals Council's decision become the final decision of the Commissioner.

16  Russell v. Bowen, 856 F.2d at 83-84; Browning, 958 F.2d at 822.  Thus, this court has no

17  jurisdiction to adjudicate the propriety of the manner in which the Appeals Council decided to

18  deny review in this case—be that review complete or incomplete, thoughtful or inconsiderate,

19  correct or incorrect.

20                  However, somewhat paradoxically, the courts have held that evidence presented

21  to the Appeals Council is part of the record for district court review.  Ramirez v. Shalala, 8 F.3d

22  1449, 1452 (9th Cir.1993); accord, O'Dell v. Shalala, 44 F.3d at 859 (10th Cir.1994), Keeton v.

23  Dept. of Health & Human Services, 21 F.3d 1064, 1067 (11th Cir.1994), Riley v. Shalala, 18

24  F.3d 619, 622 (8th Cir.1994), Wilkins v. Dept. of Health and Human Services, 953 F.2d 93, 96

25  (4th Cir.1991).  Thus, in determining whether substantial evidence supports the Commissioner's

26  decision that plaintiff is not disabled, the court considers the evidence presented to the ALJ as

1   well as the new evidence submitted to the Appeals Council, specifically, the records from

2   Sacramento County Department of Health and Human Services and the El Hogar program, dated

3   a month or so after the hearing but prior to the ALJ's decision.  However, except for its

4   persuasive effect, the court does not adjudicate the propriety of the Appeals Council's decision

5   with respect to the new evidence.

6          Good cause exists for the absence of these mental health reports from the record

7   presented to the ALJ.  The evidence itself, which accords a reasonable interpretation of plaintiff's

8   problem, is material.  The Ninth Circuit has determined that a court need only find a reasonable

9   possibility that the new evidence would have changed the outcome of the case.  Booz v.

10  Secretary of Health and Human Services, 734 F.2d 1378, 1380-1381 (9th Cir. 1984).

11         Here there exists such reasonable possibility.  The nature of the causative factors

12  of plaintiff's depression, schizoaffective disorder, and PTSD (longstanding memories of events

13  that would be traumatic to any person) suggests that plaintiff may not simply be making up a case

14  for mental impairments.  Moreover, plaintiff was not previously diagnosed with schizoaffective

15  disorder, which now raises the question of whether his previous diagnoses were accurate, and

16  whether his condition is more serious than previously believed.  Additionally, plaintiff's claim of

17  longstanding depression bears further scrutiny.  This complication dictates that the matter be

18  remanded for further administrative proceedings.  On remand, the ALJ may determine that the

19  new evidence warrants obtaining additional medical evidence or testimony.

20  CONCLUSION

21         Accordingly, for the reasons stated herein, the court recommends that summary

22  judgment be entered in plaintiff's favor, and this matter be remanded pursuant to sentence six of

23  42 U.S.C. 405(g), for further administrative proceedings consistent with these findings and

24  recommendations.  The Commissioner's motion for summary judgment should be denied.

25         These findings and recommendations are submitted to the Honorable Frank C.

26  Damrell, the United States District Judge assigned to this case, pursuant to the provisions of 28

U.S.C. § 636(b)(1).  Within ten days after being served with these findings and recommendations, the parties may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: 1/4/06

/s/ Gregory G. Hollows

_____
GREGORY G. HOLLOWS
U.S. MAGISTRATE JUDGE

GGH/076
Hunt2621.ss.wpd

17